IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 1 9 2013

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| GRACE F. GROUP VON GRAUPEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:11-CV-868-A |
| | § | |
| BURLINGTON COAT FACTORY | § | |
| OF TEXAS, L.P., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion of defendant,

Burlington Coat Factory of Texas, L.P., for summary judgment as

to all claims and causes of action brought against it by

plaintiff, Grace F. Group Von Graupen.  Plaintiff filed a

response to the motion, and defendant filed a reply.  Having

considered the parties' filings, the summary judgment record, and

applicable legal authorities, the court concludes that the motion

should be granted.

I.

Plaintiff's Claims

Plaintiff initiated the above-captioned action on December

16, 2011, by filing her original complaint against defendant.

She filed an amended complaint ("complaint"), which is the live

pleading in this action, on March 23, 2012, asserting claims for

(1) employment discrimination based on national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 ("§ 1981"), and the Texas Labor Code §§ 21.001-21.306 ("Labor Code"); (2) employment discrimination based on gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and the Labor Code; (3) employment discrimination based on age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), and the Labor Code; and (4) retaliation in violation of § 1981, Title VII, and the Labor Code.  Within each of her discrimination claims, plaintiff contends that defendant failed to promote her, demoted her, terminated her, and created a hostile work environment as a result of her age, national origin, and gender.

## II.

### The Motion for Summary Judgment

Defendant contends that it is entitled to summary judgment because plaintiff has failed to identify any admissible evidence to support the essential elements of any of her claims, and therefore has failed to create a genuine issue of material fact.

## III.

### Undisputed Facts

Plaintiff is a Hispanic female who was employed by defendant, a retailer of clothing, accessories, baby items, and other soft goods.  Plaintiff began her employment with defendant

in 2000 as a loss prevention associate, and, with the exception

of approximately seven weeks in 2002, remained employed in that

capacity until May 27, 2011, when defendant terminated her

employment.   Plaintiff was approximately fifty-one years old when

her employment was terminated.

As a loss prevention associate, plaintiff's duties and

responsibilities included protecting defendant's assets and

merchandise, and preventing theft and shoplifting.   During

plaintiff's period of employment, she reported to a number of

different managers and supervisors.   Plaintiff has a history of

disciplinary actions for various types of misconduct, such as (1)

detaining shoppers for shoplifting without a sufficient basis to

do so; (2) chasing a shoplifter in violation of company policy

and safety standards; (3) confronting a suspected shoplifter off

store premises at the individual's workplace; (4) failing to

follow company policy and procedure when detaining a suspected

shoplifter; (5) falsely accusing a co-worker of working illegally

and improperly communicating confidential information, which led

to employees believing that they were losing their jobs; and (6)

several violations of the company's attendance and scheduling

policies.   For at least two of the above-mentioned reprimands,

plaintiff refused to sign the accompanying written warnings.

In 2010, defendant realigned its loss prevention hierarchy

so that each store would report to a Regional Loss Prevention

Manager, and then to a Territory Loss Prevention Director.   In September 2010, Aaron Duxbury ("Duxbury"), who had been employed by defendant as a Field Loss Prevention Manager and had six years of retail loss prevention management experience, was promoted to the Regional Loss Prevention Manager position for defendant's Region 6, which includes stores in Oklahoma, Arkansas, Kansas, and Missouri.   In connection with defendant's realignment, John Putrino ("Putrino"), who had been defendant's Vice President of Loss Prevention, left the company in 2010.   In December 2010, Kevin Hale ("Hale") was hired as defendant's Regional Loss Prevention Manager for Region 16, which included Texas, and thus became plaintiff's direct manager.   At the time Hale was hired, he had over eighteen years of retail loss prevention experience, including sixteen years as a regional director or manager.

In early March, 2011, plaintiff met with Hale and Kenneth Wood ("Wood"), the store manager, regarding overtime that plaintiff had worked during the week of February 12, 2011. Plaintiff was not supposed to exceed forty hours per week, but she had worked 43 hours during the week in question.   During the meeting, Hale commented that plaintiff needed to speak and write better in English, and Wood agreed.   Several weeks before the meeting, plaintiff had sent Hale an e-mail with numerous spelling and grammatical errors:

> On Jan 1/1/2011 I found out the associate was free banging..
> after i check the purchase the customer left the store. I

> continue checking and found out the was 3 more person
> (custoer) the came to her line and pick merchandise and did
> not paid for any of the items. I also check on other days
> the she work and found the she also was giving merchandise
> with out bing paid. some of this customer paid with credit
> card. I will need help to get all the sku and price of the
> items. to give you a full total loss. it look the is over
> $2000. dollar.. any question please call me.

> at the store 166 or my cell phone [number]. The Report for
> this will be finish by Friday

Def.'s App. at 82. Both parties agree that Hale had a valid

basis for being disappointed in plaintiff's e-mail. At the

meeting, plaintiff was given a warning regarding the overtime and

was asked to sign it, but she refused to do so.

On March 9, 2011, plaintiff received a written warning from

Wood for using profanity on the sales floor, and admitted to such

conduct. On April 23, 2011, plaintiff worked from 3:00 p.m.

until nearly midnight, but her time card did not reflect the time

she finished working. Thus, Wood was required to enter

plaintiff's hours into the system, but Wood made a mistake with

the time by entering 11:59 rather than 23:59; the company

operated according to military time. The result was that

plaintiff's time was overstated by twelve hours, and her time

sheet indicated that she had worked 20.48 hours on April 23,

2011, including 11.47 hours of overtime. Plaintiff later signed

her time sheet that reflected the extra hours, and which read in

pertinent part:

> By signing below, I acknowledge that the time entries
> and edits in this time record are accurate. I further

acknowledge that this time report captures all time
that I worked in this pay period.  I certify that if
this record is inaccurate in any way . . . I have
contacted or will immediately contact my Human Resource
Manager to inform him/her accordingly.

Def.'s App. at 113.  Plaintiff did not notify anyone that she did

not really work the extra time noted on her time sheet.  When the

time sheet was processed, plaintiff was paid for the extra time

through direct deposit, and the amount paid to plaintiff was

significantly higher than her typical paycheck amount.  Plaintiff

received an earnings statement reflecting the inflated amount,

but, when approached, she denied any knowledge of the

inaccuracies, denied having ever seen the time card that she had

signed, denied having received the earnings statement, and denied

noticing the overpayment in her checking account.

On May 6, 2011, plaintiff met with Wood and Hale to go over

her annual performance appraisal, on which she received the

rating, "Does Not Meet Expectations."  The appraisal rated

plaintiff in several areas, and noted issues regarding

plaintiff's failure in some instances to follow established

company guidelines, and plaintiff's issues with communication

with supervisors, co-workers, and customers.  Plaintiff refused

to sign the appraisal.  The following day, plaintiff called

defendant's "Integrity Hotline," and referenced Hale's previous

comments regarding plaintiff's need to improve her spoken and

written English.

On May 18, 2011, plaintiff met with Hale and Valerie Lee ("Lee"), who was defendant's regional human resources manager, to discuss plaintiff's performance and to provide plaintiff with a "60-Day Follow Up Plan," indicating specific areas of plaintiff's job where she needed to improve, and a plan to effect the improvement. The plan specifically directed plaintiff to "Review and complete LPA Training Manual by 6/20/2011," and to "Review, understand, and follow the Loss Prevention Standards of Conduct as well as the Loss Prevention Policy prohibiting 'Profiling.'" Def.'s App. at 94. Plaintiff refused to sign the plan.

A few days after the May 18, 2011 meeting, Hale asked plaintiff to sign the Loss Prevention Standards of Conduct and the no-profiling policy, acknowledging that she had received them and was expected to abide by them. Plaintiff refused to sign the documents. Hale made the decision to terminate plaintiff's employment, and she was informed of this decision on May 27, 2011. The "Performance and Discipline Counseling Record," prepared to document plaintiff's termination, stated:

> Grace Group Von Graupen refused to sign off on the Loss Prevention Standards of Conduct and the Non-Profiling Policy for loss prevention associates. This is considered insubordination and grounds for termination. Recently, there has also been a loss of confidence in Grace due to her signing off on an inflated time record and failing to report an overpayment to the company's attention. It has been determined that Burlington Coat Factory will separate employment with Ms. Group Von Graupen at this time.

Def.'s App. at 96; Pl.'s App. at 91. Following plaintiff's

termination, her position was filled by a younger, white male. On May 31, 2011, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on national origin, age, and retaliation from January 2011 to May 27, 2011. On June 7, 2011, plaintiff amended her EEOC complaint to include discrimination based on sex.

IV.

Analysis

A.  Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the

nonmoving party must identify evidence in the record that creates

a genuine dispute as to each of the challenged elements of its

case.  Id. at 324.  See also Fed. R. Civ. P. 56(c) ("A party

asserting that a fact . . . is genuinely disputed must support

the assertion by . . . citing to particular parts of materials in

the record . . . .").  If the evidence identified could not lead

a rational trier of fact to find in favor of the nonmoving party

as to each essential element of the nonmoving party's case, there

is no genuine dispute for trial and summary judgment is

appropriate.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587, 597 (1986).

B.   Claim for Discrimination Based on National Origin, Gender,
     and Age

     To evaluate discrimination claims under Title VII, ADEA, and

§ 1981, absent direct evidence, the court looks to the

evidentiary burden-shifting framework of McDonnell Douglas Corp.

v. Green, 411 U.S. 792 (1973).  This framework requires plaintiff

first to establish a prima facie case for discrimination.  Reeves

v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); St.

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).  A

plaintiff establishes a prima facie case by showing that she:

> (1) is a member of a protected group; (2) was qualified
> for the position at issue; (3) was discharged or
> suffered some adverse employment action by the
> employer; and (4) was replaced by someone outside the
> protected group or was treated less favorably than
> other similarly situated employees outside the
> protected group.

<u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 556 (5th Cir. 2007)
(footnotes omitted).  If plaintiff makes out a prima facie case,
a presumption of discrimination arises and the burden shifts to
defendant to articulate a legitimate, non-discriminatory reason
for its actions.  <u>Id.</u> at 506-07.  If defendant meets this burden
of production, the presumption of discrimination drops from the
case, and the burden shifts back to plaintiff to prove that the
employer's proffered reason is actually a pretext for
discrimination or that discrimination was a "motivating factor"
for the employment decision.  <u>Rachid v. Jack In The Box, Inc.</u>,
376 F.3d 305, 310 (5th Cir. 2004); <u>Baker v. Am. Airlines, Inc.</u>,
430 F.3d 750, 755 (5th Cir. 2005); <u>Turner v. Kansas City S. Ry.
Co.</u>, 675 F.3d 887, 892 (5th Cir. 2012).  Plaintiff bears the
ultimate burden of proving pretext or a motivating factor, and to
carry this burden, she "must rebut each nondiscriminatory or
nonretaliatory reason articulated by the employer." <u>McCoy</u>, 492
F.3d at 557.

Within each of plaintiff's discrimination claims, she
alleges that defendant discriminated against her in (1) failing
to promote her; (2) demoting her; (3) terminating her employment;
and (4) subjecting her to a hostile work environment.  Compl. at
¶¶ 4.3, 5.3, 6.3.

1.  <u>Failure to Promote</u>

Plaintiff contends that sometime in May 2010, she was

offered a promotion to area loss prevention manager by Putrino,
who was her supervisor at that time, but that when Putrino left
the store, plaintiff was told that her promotion was placed on
hold and that she would have to reapply for the position.
Plaintiff alleges that she reapplied in September 2010, but the
position was given to Hale, whom plaintiff believes was less
qualified than she was.  Defendant argues that plaintiff cannot
establish a prima facie case based on failure to promote because
(1) plaintiff has no evidence that she was ever offered a
promotion; (2) there was no such position as "area loss
prevention manager;" (3) there is no evidence that plaintiff
applied for the other managerial positions; and (4) plaintiff was
not qualified for the other positions she claims to have applied
for.  Defendant then argues that, even if plaintiff can establish
a prima facie case, defendant's legitimate reasons for hiring
Hale and Duxbury as managers over plaintiff rebut a presumption
of discrimination, and plaintiff cannot meet her burden of
showing that defendant's reasons were pretextual or that
discrimination motivated the decisions.

It is clear that plaintiff is a member of a protected group,
and that the two managerial positions at issue were given to
individuals outside the protected class.  The remaining elements
for plaintiff's prima facie case are whether she suffered an
adverse action by not being promoted to a managerial position,

and whether she was qualified for the position.  Being passed
over for a promotion is an adverse action; however, a person must
actually apply for the promotion or make it known that she is
seeking the promotion.  Defendant argues that plaintiff never
applied for or sought the managerial positions, because defendant
has no record of any applications by plaintiff, plaintiff has
produced no records or evidence regarding an application other
than hearsay, and the position(s) plaintiff applied for are
"fictitious."  Def.'s Br. at 11-12.  Plaintiff testified in her
deposition that she filled out applications for all available
managerial positions.  Plaintiff's deposition testimony is rather
unclear about which positions she applied for and how she went
about applying for them; however, construing the evidence most
favorably to plaintiff, the court will give her the benefit of
the doubt for purposes of this motion and assume that she applied
for the positions eventually filled by Duxbury and Hale.

    The remaining element of a prima facie case is whether
plaintiff was qualified for the promotion she sought.  Among the
qualifications for regional loss prevention manager were six-to-
eight years of management experience, which plaintiff did not
have, as the only position she admits she has ever held at
defendant was loss prevention associate, which carries no
management responsibility.  Def.'s App. at 2-3, 7.  It is
plaintiff's burden to identify evidence that she was qualified

for the promotion, and she has failed to do so.   See Johnson v.
Gen. Tire & Rubber Co., 652 F.2d 574, 579 (5th Cir. Unit A 1981).

Even if plaintiff were qualified for the position and were
able to establish a prima facie case, defendant has proffered
valid, legitimate reasons for failing to promote her and for
selecting other candidates for the managerial positions.   In
contrast to plaintiff's lack of management experience, Duxbury
had approximately six years of managerial and supervisory
experience in retail loss prevention and had additional
qualifications, and Hale had approximately sixteen years as a
regional director or manager.   Thus, both Duxbury and Hale
appeared to be far more qualified than plaintiff to hold a
managerial position, and "the promotion of a better qualified
applicant is a legitimate and nondiscriminatory reason for
preferring the successful applicant over the rejected employee
who claims that the rejection was discriminatory."   Jefferies v.
Harris County Cmty. Action Ass'n., 693 F.2d 589, 590 (5th Cir.
1982).

In response to defendant's proffered reasons, plaintiff
argues that defendant has failed to establish that Duxbury was
qualified, and that various employees, including Wood, "made
several age-related comments indicative of pretext and therefore
discriminatory animus."   Pl.'s Br. at 13-14.   For such comments
to be considered sufficient evidence of bias, they must be (1)

made by an individual with authority over the promotions; (2)
related to the protected class of which plaintiff is a member;
(3) proximate in time to the promotions; and (4) related to the
promotions.  Manning v. Chevron Chem. Corp., 332 F.3d 874, 882
(5th Cir. 2003); Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th
Cir. 1996).  While the comments appear to be related to
plaintiff's protected class, her age group, plaintiff provides no
evidence to meet her burden on the other three elements.
Plaintiff produces no evidence to establish that any of the
individuals who made the age-related comments had any authority
over who was promoted to regional management positions.
Plaintiff argues that because Wood was the store manager, he was
in a position of authority, but provides no evidence to support
such an argument, and the evidence within the record reflects
that Wood did not have authority to make decisions regarding
promotions.  Plaintiff also cannot definitively state when the
comments were made, except that many were allegedly made in early
2011, while the promotions were awarded earlier, in 2010.  Thus,
she cannot establish that the comments were made in close
temporal proximity to the promotions, and she cannot establish
that the comments were at all related to the promotions.

 2. Demotion

  In plaintiff's complaint, she alleges that she was
discriminatorily demoted because of her age, gender, and national

origin.  Defendant argues that this claim fails because plaintiff cannot show that she was ever demoted, and supports this argument with deposition testimony from plaintiff that she held the same position throughout her entire term of employment with defendant. Further, defendant points out that when plaintiff was asked in an interrogatory for the basis of her demotion claim, plaintiff stated that she was reassigned to the floor and placed on probation for an unspecified period of time, with no mention of any losses in compensation or benefits.  Defendant denies the truth of such reassignment and probation, and notes that there is no evidence to support plaintiff's contention, but argues that even if true, the allegations cannot constitute an actionable adverse employment action because they are not ultimate employment decisions.  See Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004) ("[A]n adverse employment action consists of *ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating.") (emphasis in original) (internal quotations omitted).  Plaintiff fails to respond to defendant's argument regarding demotion, and fails to produce or identify any evidence that can show that she was ever demoted.  Therefore, her demotion claim fails.

     3.   Termination of Employment

     The parties agree that plaintiff can establish a prima facie case for age, national origin, and gender discrimination in

connection with the termination of plaintiff's employment in May 2011, as she was a member of a protected group, was qualified as a loss prevention associate, was discharged, and was replaced by a younger, white male.  However, the parties disagree as to whether plaintiff can show that defendant's reasons for terminating her employment were pretextual or motivated by discrimination.

Defendant has produced several legitimate reasons for terminating plaintiff's employment.  Plaintiff "refused to sign certain company policy documents to verify her receipt of the documents or to confirm her willingness to abide by the policies, protocols, and procedures therein."  Def.'s Br. at 15.  Defendant also considered the actions of plaintiff in working improper hours, and signing an inflated time record and failing to report the resulting overpayment she received, particularly in light of plaintiff's responsibility to prevent losses to the company.

Plaintiff contends that her meeting with Hale and Wood in early March 2011, in which Hale and Wood commented that she needed to improve her spoken and written English, is sufficient to carry her burden of rebutting "each nondiscriminatory or nonretaliatory reason articulated by the employer."  McCoy, 492 F.3d at 557.  However, even plaintiff admits that she had sent a very poorly written, confusing email that was discussed at the meeting, and she admits that Hale and Wood had a right to be

disappointed in the quality of her communication.  Plaintiff
points to no other evidence related to the decision to terminate
her.[1]

    4.  Hostile Work Environment

    Plaintiff contends that she was subjected to a hostile work
environment based on gender,[2] national origin, and age.  To
establish a hostile work environment claim, plaintiff must show
(1) she belongs to a protected group; (2) she was subjected to
unwelcome harassment; (3) the harassment was based on a protected
characteristic; (4) the harassment affected a term, privilege, or
condition of employment; and (5) the employer knew or should have
known of the harassment and failed to take remedial action.
Harvill v. Westward Commc'ns, LLC, 433 F.3d 428, 434 (5th Cir.
2005).

    In determining whether a hostile work environment exists,
courts consider the totality of the circumstances, and weigh
factors such as "the frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating, or

---

[1]   In her brief, plaintiff asserts that during the meeting, Wood and Hale made a comment
referring to "foreigners with accents;" however, in her deposition testimony, plaintiff states that the only
things discussed in the meeting were the warning regarding overtime and the comment about her poor
communication in English. Def.'s App. at 147.  Still, even if true, an isolated, non-specific comment
regarding accents is insufficient to rebut the legitimate, non-retaliatory reasons for plaintiff's termination
proffered by defendant.

[2]  Plaintiff provides no evidence and makes no argument for a gender-based hostile work
environment; therefore, the court addresses only plaintiff's claims for hostile work environment based on
national origin and age.

a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 347 (5th Cir. 2007). While "verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support evidence of a Title VII violation, simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory charges that can survive summary judgment." Turner, 476 F.3d at 347-48 (internal citations and quotations omitted). "A workplace environment is hostile when it is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the victim's conditions of employment." Dediol v. Best Chevrolet, Inc., 655 F.3d 435, 441 (5th Cir. 2011). Thus, the standard requires proof of severe or pervasive conduct that can be characterized as "extreme." Faragher v. City Of Boca Raton, 524 U.S. 775, 788 (1998).

Plaintiff is able to establish the first three elements, as she belongs to a protected group, received unwelcome comments to some degree, and the comments were based on her protected characteristics. Plaintiff fails, however, to produce evidence sufficient to create a genuine issue of fact regarding the fourth and fifth elements, as she fails to show that a term, condition, or privilege of employment was affected by the comments, and

fails to show that defendant knew or should have known about any harassment.

Plaintiff alleges that the following comments were made to her "once in a while" by co-workers and, on one or two occasions, by Wood: "You're old;" "You are too old to be in loss prevention;" "We need young people;" and "Why don't you quit?" Def.'s App. at 25-26; 39-45. There is no evidence that these comments were severe, pervasive, or extreme enough to constitute a hostile work environment, as they were made over an indeterminate period of time, and there is also no evidence that defendant knew about the comments. Plaintiff did complain to Wood about the co-workers and others, but failed to mention the age-related comments, and did not reference her age, sex, or national origin or that she felt she was being harassed for any of those reasons in her complaints to Wood. Id. at 72-76. She merely stated that she felt the co-workers were "looking for excuses to get to [her]," and that Holmes spoke inappropriately to her in front of a customer and King "yelled at [her] in the fitting room." Id. at 73-74. There is nothing in the record to indicate that Hale or any other supervisor was aware of any hostility directed toward plaintiff because of her age.

Plaintiff's other allegations refer to a hostile work environment based on her national origin, and appear to be based solely on Hale and Wood's comments to her that she needed to

improve her spoken and written English communication skills, and that they had made a previous comment about accents of foreigners.

Defendant points out that the Fifth Circuit has previously held that comments much more egregious than those made toward plaintiff were insufficient to create a hostile work environment. For example, in Moody v. U.S. Secretary of the Army, 72 F. App'x 235, 238-39 (5th Cir. 2003), a plaintiff alleged that her supervisor made comments to her such as, ""Granny have you not got anything to do?"; "See that old woman and she will take care of you"; "Old woman, when are you going to retire and go home so someone younger can have a job?"; and again, "Granny, when are you going to retire and let someone younger have a job?"  The court stated, "While these comments are offensive and boorish, they are not 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Id. at 239 (quoting Shepherd v. Comptroller of Pub. Accounts of the State of Texas, 168 F.3d 871, 874 (5th Cir. 1999).  Here, the comments directed toward plaintiff are far less severe and pervasive, and while she may have perceived them as rude or offensive, they do not rise to the level necessary to create liability on the part of defendant for a hostile work environment.

C.   Retaliation Claims

The standards for plaintiff's retaliation claims under Title VII, § 1981, and the Texas Labor Code are also governed by the McDonnell Douglas framework.  See Brooks v. Lubbock Cnty. Hosp. Dist., 373 F. App'x 434, 436 (5th Cir. 2010); Machinchick v. PB Power, Inc., 398 F.3d 345, 356 (5th Cir. 2005).  To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment action.  Taylor v. United Parcel Serv., Inc., 554 F.3d 510, 523 (5th Cir. 2008).  If plaintiff does so, the burden of production shifts to the defendant to provide a legitimate, non-retaliatory reason for its action. Byers v. Dall. Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000).  Then, plaintiff must show that the defendant's proffered reason was merely a pretext for unlawful retaliation. Id.

1.   Participation in Protected Activity

An employee has engaged in protected activity if she "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C.A. § 2000e-3(a); Byers, 209 F.3d at 427-28.  Activities such as filing

internal grievances or memos, or otherwise complaining internally, do not amount to protected activity under Title VII when activities protected under Title VII are not specifically referenced.  See Brown v. United Parcel Serv., Inc., 406 F. App'x 837, 840 (5th Cir. 2010) ("Magic words are not required, but protected opposition must at least alert an employer to the reasonable belief that unlawful discrimination is at issue."); Kaplan v. City of Arlington, 184 F. Supp.2d 553, 564-65 (N.D. Tex. 2002); E.E.O.C. v. Omni Hotels Mgmt. Corp., 516 F. Supp.2d 678, 704-06 (N.D. Tex. 2007).

Plaintiff contends that she called defendant's "Integrity Hotline" and stated that she was threatened with the loss of her job if she did not improve her spoken and written English, but admits that she did not mention her age, sex, but did mention that she was Hispanic, during the conversation.  Defendant argues that this phone call by plaintiff was insufficient to put defendant on notice that plaintiff was complaining about discrimination, but plaintiff argues that it clearly implicates discrimination based on national origin because her proficiency in communication was discussed and questioned, and she states that she mentioned she was Hispanic.  Thus, for purposes of this motion, the court will assume that plaintiff participated in some form of protected activity.

2.   Adverse Employment Action

Plaintiff satisfies this prong, as her employment was terminated by defendant.

3.   Causal Connection Between the Protected Activity and Adverse Employment Action

For this prong, plaintiff must show that, but for her participation in protected activity, she would not have been terminated.   See Mato v. Baldauf, 267 F.3d 444, 450 (5th Cir. 2001).   In doing so, plaintiff must identify who made the decision, show that the decisionmaker was aware of the protected activity.   Id.   The record reflects that Hale was the individual responsible for deciding to terminate plaintiff's employment, and there is no evidence whatsoever to indicate that Hale was aware of plaintiff's phone call to the Integrity Hotline, or that he decided to fire plaintiff because of such phone calls.   See id. at 452-53.   Plaintiff points to no other evidence that can otherwise suggest that there is any causal connection between plaintiff's phone calls and her termination.   Plaintiff cites temporal proximity, noting that the meeting with Hale and Wood occurred around March 7, 2011, she called the hotline shortly after the meeting, she received her first poor performance appraisal in May 2011, and she was terminated on May 27, 2011. However, while temporal proximity may factor into a retaliation claim, plaintiff must show more than suspicious timing to create a genuine issue of material fact.   See Roberson v. Alltel Info.

Servs., 373 F.3d 647, 655-56 (5th Cir. 2004).  Plaintiff's other contention is that she was placed on a 60-day improvement plan on May 18, 2011, but was terminated only 10 days later, after refusing to sign an acknowledgment that she had received certain information.  Plaintiff, however, fails to show how this has any relation whatsoever to the calls she claims to have placed to the hotline.  Having reviewed the record and all evidence, the court finds nothing that can establish a connection between plaintiff's alleged complaints and the termination of her employment.  Therefore, plaintiff fails to establish a prima facie case for retaliation, and her claims must fail.[3]

V.

Order

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action brought by plaintiff against defendant be, and are hereby, dismissed with prejudice.

SIGNED March 19, 2013.

JOHN McBRYDE
United States District Judge

---

[3]  The court further notes that, even if plaintiff had been able to establish a prima facie case for retaliation, defendant has proffered legitimate, non-discriminatory reasons for her termination, and plaintiff has failed to establish that those reasons are pretextual.